IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

PRISCILLA BENBOW,
      Plaintiff,

vs.                                    Case No.: 5:12cv17/EMT

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,
      Defendant.
_____/

## <u>MEMORANDUM DECISION AND ORDER</u>

This case has been referred to the undersigned magistrate judge for disposition pursuant to the authority of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, based on the parties' consent to magistrate judge jurisdiction (*see* docs. 6, 7). It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act"), for review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34, and for Supplemental Security Income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner is affirmed.

I.      PROCEDURAL HISTORY

On July 12, 2007, Plaintiff filed applications for DIB and SSI, and in both applications she alleged disability beginning March 20, 2003 (tr. 10).[1] The applications were denied initially and on

---

[1] All references to "tr." refer to the transcript of Social Security Administration record filed on April 12, 2012 (doc. 9). Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

reconsideration, and thereafter Plaintiff requested a hearing before an administrative law judge ("ALJ"). A hearing was held on January 22, 2010, at which Plaintiff was represented by counsel, and on February 9, 2010, the ALJ issued a decision in which he found Plaintiff "not disabled," as defined under the Act, at any time through the date of his decision (tr. 10–20). The Appeals Council subsequently denied Plaintiff's request for review (*see* tr. 1). Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007). This appeal followed.

II.    FINDINGS OF THE ALJ

In his decision dated February 9, 2010, the ALJ made several findings relative to the issues raised in this appeal (*see* tr. 10–20):

1) Plaintiff meets the insured status requirements of the Act through June 30, 2008.[2]

2) Plaintiff has not engaged in substantial gainful activity since March 20, 2003.

3) Plaintiff's degenerative disc disease ("DDD"), hypertension, chest palpitations, osteoarthritis, and asthma are "severe" impairments, but she has no impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4) Plaintiff has the residual functional capacity ("RFC") to perform light work, with certain postural and environmental restrictions.

5) Plaintiff, who has a high school education and is able to communicate in English, is unable to perform any past relevant work.

6) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not she has transferable job skills.

7) Considering Plaintiff's age, education, work experience, and RFC, there are jobs existing in significant numbers in the national economy that she can perform; therefore, she has not been under a disability, as defined in the Act, from March 20, 2003, through February 9, 2010.

---

[2] Thus, the time frame relevant to Plaintiff's claim for DIB is March 20, 2003 (alleged onset), through June 30, 2008 (date last insured). The time frame relevant to her claim for SSI is July 12, 2007 (the date she applied for SSI) through February 9, 2010 (the date the ALJ issued his decision). *See* Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (indicating that SSI claimant becomes eligible to receive benefits in the first month in which she is both disabled and has an SSI application on file).

## III.    STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439.  The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id*. § 423(d)(2)(A).

Pursuant to 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g), the Commissioner analyzes claims for DIB and SSI in five steps:

1.      If the claimant is performing substantial gainful activity, she is not disabled.

2.      If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.      If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.      Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. 20 C.F.R. §§ 404.1512, 416. 912. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.     RELEVANT HEARING TESTIMONY & MEDICAL/PSYCHOLOGICAL HISTORY[3]

A.      Relevant Hearing Testimony

At Plaintiff's hearing on January 22, 2010, the ALJ asked Plaintiff whether she had any mental or emotional problems that would prevent her from working, and Plaintiff responded, "Well, I get depressed." (tr. 36). In response to additional questioning, Plaintiff stated she was not taking

---

[3] The claims raised in this appeal relate only to Plaintiff's psychological condition, and thus the summary provided herein primarily concerns such.

medication for depression or being treated for depression at the time of her hearing and that she had last been treated in 2002 or 2003 by a "Dr. Nolan," whom she described as "just a regular medical doctor" (i.e., not a mental health specialist, such as a psychiatrist or psychologist) (tr. 37, 39–40). Plaintiff also stated that her depression—which is her only mental health problem—never required treatment with a mental health specialist, and that the only time she had seen such a specialist was in connection with her claims for DIB/SSI (tr. 37). Finally, Plaintiff testified that "every two months" she has a crying spell that lasts about ten to fifteen minutes (tr. 40).

B.      Relevant Medical/Psychological History

During the time frame relevant to this appeal, Plaintiff was treated for chest palpations and prescribed medication for hypertension and asthma (tr. 12). Additionally, she was diagnosed with osteoarthritis in the right hip, with radicular pain into the lower extremity (tr. 13, 15). Plaintiff underwent lumbar surgery in 2001 and thereafter was treated for complaints of low back pain (*see* tr. 12–13). On September 17, 2007, Plaintiff underwent a consultative physical examination by Sam R. Banner, M.D., in connection with her disability claims (*see* tr. 327). Dr. Banner included "depression" in a list describing Plaintiff's past medical history, and following Plaintiff's examination he diagnosed depression, chronic low back and right hip pain, hypertension, and asthma (tr. 327, 330).[4]

On September 18, 2007, Plaintiff underwent a consultative psychological examination by George L. Horvat, Ph.D., at the Commissioner's request (tr. 333–36). Plaintiff chiefly complained of depression and stated she had "been treated for depression since 2004" (tr. 333–34). Dr. Horvat assessed pain disorder and major depressive disorder, recurrent, and he opined that if Plaintiff "can be cleared physically to return to work, th[ere] are no psychological reasons why she cannot do so" (tr. 335).

---

[4] Dr. Banner's notes do not reflect that he conducted a mental status examination or that he reviewed Dr. Nolan's records (or any other physician's records) (*see* tr. 327–30). His notes do reflect that Plaintiff's family physician is Dr. Nolan, but they indicate only that Dr. Nolan previously diagnosed lumbar DDD (tr. 327). It should be noted that Plaintiff's file includes no records from a "Dr. Nolan," although it does include records from Richard C. Goff, M.D., a family physician (*see* tr. 300–11). Dr. Goff treated Plaintiff between March 2005 and June 2007 for a variety of physical ailments, but he did not treat her for depression (or any other mental disorder), diagnose depression, or prescribe medications for any mental health condition (*id.*).

On October 15, 2007, Joseph Peterson, Ph.D., J.D., a non-examining agency psychologist, completed a form titled Psychiatric Review Technique ("PRT") (Tr. 346–59). He evaluated Plaintiff's psychiatric condition—which he characterized as adjustment reaction disorder with depressive features—under section (or "Listing") 12.04 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (Affective Disorders) (tr. 346, 349). Dr. Peterson opined that Plaintiff's adjustment disorder was not a severe impairment and did not satisfy the diagnostic criteria of Listing 12.04 (*id.*). He also opined that as a result of her adjustment disorder she would have mild difficulties in maintaining concentration, persistence, or pace and mild restriction of activities of daily living but no difficulties in maintaining social functioning and no episodes of deterioration or decompensation (tr. 356). On December 14, 2007, Thomas Conger, Ph.D., also a non-examining agency psychologist, completed a PRT (tr. 371–84). He assessed depressive disorder, not otherwise specified, and evaluated the disorder under Listing 12.04 (tr. 371, 374). Dr. Conger's opinions are identical to those of Dr. Peterson, with one exception. Dr. Conger opined that Plaintiff would have <u>no</u> restriction in activities of daily living as a result of her condition (as opposed to mild) (tr. 381).[5]

Finally, Plaintiff received care at the Florida Department of Health ("FDH") in November and December of 2009 (tr. 390–93). Treatment notes reflect complaints of physical ailments, such as left hand discomfort, rapid heart rate, and reflux, and treatment for these problems as well as treatment for problems related to Plaintiff's hypertension, allergies, sinuses, and thyroid (*id.*).

V.    DISCUSSION

Plaintiff claims the ALJ erred in finding that she "does not have any mental limitations that would preclude her from working" or impact her ability to work (doc. 11 at 2, 8, 14). In support, Plaintiff asserts that Dr. Horvat's observations and Plaintiff's subjective complaints establish that she has such limitations and the ALJ erred in failing to so find (*see* doc. 11 at 8–14).

---

[5] Although Dr. Peterson and Dr. Conger checked boxes on the PRTs indicating mild restrictions in certain areas, they both offered opinions in the narrative sections of the PRTs that suggest Plaintiff had minimal—if any—such restrictions. For example, based on Plaintiff's reported daily activities and other factors, Dr. Peterson stated that Plaintiff appeared to have no "significant compromises to her functional capacities deriving from any mental factors" (tr. 358). Similarly, Dr. Conger stated that Plaintiff "remains fully functional from a mental perspective" and "appears to be primarily limited by her physical difficulties" (tr. 383).

Plaintiff does not directly contend that the ALJ erred at step two in failing to find her depression severe, but to the extent she has raised such a contention she is not entitled to relief. At step two of the sequential evaluation process, a claimant must prove that she is suffering from a severe impairment or combination of impairments, that have lasted (or must be expected to last) for a continuous period of at least twelve months, and which significantly limit her physical or mental ability to perform "basic work activities." *See* 20 C.F.R. §§ 404.1509, 404.1520(c) 404.1521(a).[6] Basic work activities include mental functions such as understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting (as well as physical functions not at issue here). 20 C.F.R. § 404.1521(b). An impairment can be considered non-severe "only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984); *see also* Bowen v. Yuckert, 482 U.S. 137, 153 (1987) ("The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education and experience were taken into account"). Although the claimant carries the burden at step two, the burden is mild. McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986) ( "Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected."). A claimant need only show that "her impairment is not so slight and its effect is not so minimal." *Id.*

Here, Plaintiff clearly failed to carry her burden at step two. Initially, although Plaintiff claims to have been treated for depression by Dr. Nolan, there are no records in the file that substantiate treatment by Dr. Nolan or treatment for depression. *See* Salles v. Comm'r of Soc. Sec. Admin., 229 F. App'x 140, 144–45 (3d Cir. 2007) (concluding that ALJ did not err in failing to find

---

[6] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416). Therefore, citations in this Order should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

claimant's depression, HIV, and eye problems severe, and noting "[a]lthough Salles had testified to experiencing symptoms consistent with these ailments, she does not dispute the Commissioner's observation that there was no medical evidence in the record before the ALJ that [she] had been diagnosed with or treated for these conditions"); *see also* Social Security Ruling ("SSR") 96-4p (eff. July 2, 1996) ("In the absence of a showing that there is a 'medically determinable . . . mental impairment,'" an individual must be found not disabled at step two because no "symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable . . . mental impairment."). Moreover, there are conflicts in the record regarding Plaintiff's alleged history of treatment. For example, Plaintiff testified at her hearing that she was last treated for depression by Dr. Nolan in 2002 or 2003, but she advised Dr. Horvat that she had been treated for depression "since 2004." Additionally, even if Plaintiff had actually been treated for depression by Dr. Nolan or another source, it is far from clear that she was treated during the time frame relevant to this appeal or that she suffered from depression for a continuous twelve-month period. Indeed, if Plaintiff's sworn statements are credited over those she made to Dr. Horvat, it appears that most if not all of her treatment occurred prior to March 20, 2003, the date she alleges she became disabled, and long before July 12, 2007, the date she became eligible for SSI benefits. Regardless, Dr. Nolan is a family physician, who obviously did not refer Plaintiff to a specialist or believe that her condition warranted such a referral or any other type of intensive mental health treatment. Finally, although the record reveals that non-treating sources diagnosed depression, diagnoses alone are insufficient to establish severity at step two. *See, e.g.*, Salles, 229 F. App'x at 145 (diagnoses alone, including diagnosis of depression, insufficient to establish severity at step two). Plaintiff was required to present evidence that her mental condition caused significant limitations in her ability to do basic work activities or impaired her capacity to cope with the mental demands of working. She failed to do so. Thus, the court finds no error with regard to the ALJ's findings at step two.

In a similar contention, Plaintiff argues that the ALJ erred in finding that she had no mental limitations that affected her ability to work, which finding—Plaintiff contends—is based on the ALJ's erroneous decision to assign "great weight" to the opinions of Dr. Horvat (*see* doc. 11 at 8–9).

Whether this contention is a challenge to the ALJ's consideration of Dr. Horvat's opinions or to his RFC determination, Plaintiff is not entitled to relief.

As previously noted, in September 2007 Dr. Horvat opined that there was no psychological reason why Plaintiff could not work. Plaintiff contends that this opinion is inconsistent with Dr. Horvat's diagnosis of major depressive disorder and with certain observations he made during Plaintiff's evaluation (e.g., that Plaintiff's thought content was depressed, her reality testing was distorted, her decision making vacillated, her coping ability was overwhelmed, she isolated herself due to illness) (doc. 11 at 5, 9; *see also* tr. 333–36). In sum, Plaintiff asserts that Dr. Horvat's opinion conflicts "with his own treatment notes" and thus should have been rejected by the ALJ (*see* doc. 11 at 9).

Contrary to Plaintiff's argument, the ALJ did not err in affording great weight to the medical opinion of Dr. Horvat (*see* tr. 17). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). An ALJ should consider and weigh all medical opinions in the case record. *See generally* 20 C.F.R. § 404.1527. Absent "good cause," an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight." Lewis, 125 F.3d at 1440. Additionally, although the opinion of a consultative examiner is not entitled to the same degree of weight as that of a treating physician, where substantial record evidence supports the ALJ's decision to discount a treating physician's opinion, the opinion of an examining physician itself becomes entitled to significant weight. *Id.*; Richardson v. Perales, 402 U.S. 389, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (report of consultative examiner may constitute substantial evidence supportive of a finding adverse to a claimant).

As previously noted, there are no mental health treatment records in the file and thus no opinion from a treating source regarding Plaintiff's mental condition or capacities. The opinion of Dr. Horvat therefore became entitled to significant weight. Although his opinion could have nevertheless been discredited, the ALJ had no basis to do so because—as the ALJ found—the opinion is consistent with other evidence of record (tr. 13, 17). Such evidence includes: (1) the

opinions of Dr. Conger and Dr. Peterson that Plaintiff had no severe mental impairment; (2) the lack of mental health treatment by a specialist; (3) the lack of complaints of depression or depressive symptoms by Plaintiff to Dr. Goff or her treating physicians at FDH; (4) Plaintiff's daily activities; and (5) Plaintiff's demonstrated ability to communicate effectively with the ALJ and the Commissioner's employees (*see* tr. 13, 17; *see also, e.g.*, tr. 26–43 (hearing transcript), tr. 153 (notations by Commissioner's employee reflecting no deficits in Plaintiff's ability to understand, concentrate, and respond coherently)).

Furthermore, although Dr. Horvat did make the observations noted by Plaintiff (identified *supra*) during his consultative evaluation, he also made the following observations not noted by Plaintiff: (1) Plaintiff was a reliable informant; (2) Plaintiff denied any hallucinations or suicidal ideations; (3) Plaintiff was alert, and her attitude was "cooperative"; (4) Plaintiff's "social judgment," attention, concentration, memory, and speech flow were normal; (5) Plaintiff was oriented times four; (6) Plaintiff's thought content was appropriate, her organization was logical, her fund of knowledge was average, her judgment was commonsensical, and her abstraction was concrete; and (7) when asked, Plaintiff did not indicate that depression interfered with her daily activities, and she described her daily activities as including attendance at church and her son's sporting events (tr. 333–35). When all of Dr. Horvat's observations are considered together, his ultimate opinion—that Plaintiff's psychological condition would not interfere with her ability to work—is supported by his examination notes, as well as the record as a whole. *See, e.g.*, 20 C.F.R. § 404.1521(b) (basic work activities include mental functions such as using judgment and understanding, carrying out, and remembering simple instructions). Correspondingly, the ALJ did not err in relying on Dr. Horvat's opinion to conclude that Plaintiff's depression caused no functional limitations that would affect her ability to work.[7]

---

[7] Although Dr. Peterson and Dr. Conger opined that Plaintiff would have mild limitations in certain areas, the ALJ did not err in finding that Plaintiff had no such limitations based on Dr. Horvat's opinion (*see* tr. 13). Dr. Horvat examined Plaintiff, and Dr. Peterson and Dr. Conger did not. Dr. Horvat's opinion was thus entitled to more weight. *See* 20 C.F.R. § 404.1527. Furthermore, the ALJ explained his reasons for affording great weight to the opinions of Dr. Horvat, and as previously explained his reasons are supported by substantial evidence on the record as a whole. Additionally, as discussed *supra* at footnote 5, the opinions of Dr. Peterson and Dr. Conger in the narrative sections of their PRTs are consistent with the opinion of Dr. Horvat and the findings of the ALJ. Finally, because the ALJ properly found that Plaintiff had no limitation in activities of daily living, no limitation in social functioning, no limitation in concentration, persistence, or pace, and no episodes of decompensation (tr. 13), he did not err in failing to include any

Plaintiff also contends the ALJ erred in discounting her subjective complaints, but the court finds no error in this regard. In support of her contention Plaintiff states as follows, "The ALJ also found Plaintiff's claims of depression not credible because of her treatment history and her failure to seek treatment . . . [and] that although she had received treatment for depression in the past by her primary physician, she has not received treatment from any mental health care provider . . . [and she] failed to report any depression" to the physicians at FDH (doc. 11 at 10). Plaintiff argues that the ALJ erroneously considered her failure to seek treatment because he failed to consider the impact of Plaintiff's "mental illness itself and how it affected her failure to seek treatment" (*id.* (citing Sparks v. Barnhart, 434 F. Supp. 2d 1128 (N.D. Ala. 2006)[8])). She also appears to assert that the ALJ erred in finding that her daily activities are inconsistent with a disabling mental condition (*see* doc. 11 at 11–12).

The ALJ properly concluded that the evidence—including Plaintiff's overall lack of treatment and her lack of specialized treatment—failed to substantiate the presence of a severe mental impairment and failed to support any claim of disabling mental limitations (*see* tr. 12–13). *See, e.g.*, Williams v. Sullivan, 960 F.2d 86, 89 (8th Cir. 1992) (anxiety properly deemed non-severe where it "was situational and had not required counseling, psychiatric treatment or hospitalization"); *see also* Watson v. Heckler, 738 F.2d 1169, 1173 (11th Cir. 1984) (in addition to objective medical evidence, in evaluating a claimant's credibility it is proper for ALJ to consider use of painkillers, failure to seek treatment, daily activities, conflicting statements, and demeanor at the hearing); Gray v. Comm'r of Soc. Sec. Admin., 365 F. App'x 60, 63 (9th Cir. 2010) (unpublished) ("Gray had not 'participated in significant treatment for mental impairments,' which was a clear and convincing reason for discrediting Gray's testimony regarding those limitations.") (quoting Parra v. Astrue, 481 F.3d 742, 750–51 (9th Cir. 2007)). It is also relevant that Plaintiff took no medications for her depression. Although Plaintiff told Dr. Horvat she took diazepam (tr. 334), and she may have

_____

mental restrictions in the RFC. *Cf.* Alesia v. Astrue, 789 F. Supp. 2d 921, 933 (N.D. Ill. 2011) (after determining that claimant's depression caused mild limitations in three functional areas, and thus was a non-severe impairment, ALJ erred by failing to include any such limitations in the RFC) (citing Terry v. Astrue, 580 F.3d 471, 477 (7th Cir. 2009) (when determining a claimant's RFC, an ALJ must consider the combined effect of all impairments, "even those that would not be considered severe in isolation")).

[8] Although Plaintiff cited Sparks, 434 F. Supp. 2d. at **1148** (doc. 11 at 10), the case is found at page **1128**.

Case No.: 5:12cv17/EMT

reported the same to Dr. Banner (*see* tr. 331), on the reports she submitted to the Commissioner she listed no such medication (tr. 160, 241, 270), and there are no treatment records documenting a diazepam prescription or any other prescription for the treatment of a mental health disorder. *See* Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996) (ALJ may consider treatment that is "entirely conservative in nature" in discrediting a claimant's testimony). What is more, Plaintiff testified that her depression caused only a ten to fifteen minute crying spell once every two months, which testimony—even if accepted as true—demonstrates that Plaintiff's depression caused only minimal symptoms, was not severe, and would not have interfered with her ability to work.

Additionally, the record wholly fails to support Plaintiff's suggestion that her "mental illness itself . . . affected her failure to seek treatment." *Cf.* Sparks, 434 F. Supp. 2d at 1132–36 (in evaluating claimant's credibility, ALJ erred in considering her failure to follow through with recommended mental health treatment where—among other factors—claimant had "a rather long history of seeking treatment for her mental illness"; her treating physician referred her to a psychiatrist, and the psychiatrist diagnosed panic disorder with agoraphobia and social phobia; and a consulting psychologist assessed panic attacks with agoraphobia, social anxiety disorder, and dysthymia, and opined she would experience moderate to severe impairments in the workplace). Stated simply, unlike the circumstances in Sparks, there is nothing in the record here to suggest that Plaintiff's mental condition limited her insight or caused her to exercise poor judgment in failing to seek treatment. Sparks, 434 F. Supp. 2d at 1136 (citing Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989)).

Finally, the ALJ did not err in considering Plaintiff's daily activities in making his findings. Plaintiff and others, including a friend, a neighbor, and her pastor reported that she could prepare meals, do laundry, dust, wash dishes, drive, and shop for groceries (tr. 184, 186, 187, 197, 207, 208, 213, 214, 215, 216). Their reports also indicate that she could attend church and participate in church council meetings (tr. 188, 196, 198, 209, 217). Such activities are inconsistent with her allegations of disability. *See* Moore, 405 F.3d at 1212–13 (ALJ properly considered claimant's "descriptions of her diverse daily activities and her claims of infirmity," which called into question her "contentions that she could not maintain consciousness or perform light work, in light of her ability to drive, provide childcare, bathe and care for herself, exercise, and perform housework").

Here, as in <u>Moore</u>, Plaintiff's daily activities call into question any suggestion that she suffers from significant symptoms of depression that might interfere with her ability to work.

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed. 42 U.S.C. § 405(g); <u>Lewis</u>, 125 F. 3d at 1439; <u>Foote</u>, 67 F.3d at1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is **ORDERED** that the decision of the Commissioner is **AFFIRMED**, that this action is **DISMISSED,** and that the clerk close the file.

At Pensacola, Florida this 28th day of February 2013.


_/s/ Elizabeth M. Timothy_
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

Case No.: 5:12cv17/EMT